# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARGARET ZANDSTRA, as Administrator of the Estate of DAVID ZANDSTRA, Deceased<br><br>**Plaintiff**<br><br>v.<br><br>ANDREW MARTIN and EUGENE TRAY, Individually<br><br>**Defendants** | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Margaret Zandstra, as Administrator of the Estate of David Zandstra, through attorneys, Matthew A. Casey, and Kevin Harden, Jr., of Ross Feller Casey, LLP, allege the following:

## INTRODUCTION

1. Andrew Martin and Eugene Tray, purportedly experienced homicide investigators, knowingly submitted incomplete affidavits of probable cause and suppressed evidence to cause the malicious prosecution of David Zandstra.

2. In August 1975, an eight-year-old girl was abducted in Marple Township, Pennsylvania.

3. The young girl attended a summer camp at two church locations in Marple Township, including at the church ministered by Mr. Zandstra.

4. In October 1975, skeletal remains that were identified as the remains of the young missing girl were located within the Ridley Creek State Park in Delaware County, Pennsylvania.

5. From 1975 until 2023, the kidnapping-murder case remained unsolved.

6. In July 2023, defendants Martin and Tray, as a part of their conspiracy to frame Mr. Zandstra for murder, falsely made it appear as if all evidence pointed to Mr. Zandstra, when they had previously submitted sworn documents to the court describing (1) a registered sex offender that they believed committed the crime, and (2) the confession of the decedent's sister, who agreed to wear a wire to prove her father forced her to kill the decedent to cover-up prior sexual assaults.

7. Instead, these Defendants illegally coerced an admission of guilt from Mr. Zandstra, a then-83-year-old stroke and cancer survivor.

8. These Defendants caused evidence of the alternative suspects and Mr. Zandstra's exclusion as a contributor of DNA to be withheld until the eve of trial, after Mr. Zandstra had been incarcerated and his cancer had returned and gone untreated.

9. As a result of the Defendants' misconduct, Mr. Zandstra was arrested and tried for the most heinous of crimes, causing him to suffer embarrassment, deterioration of his mental status, and substandard medical care while incarcerated, which led to the progression of his cancer to an advanced stage and his death.

10. A jury of Mr. Zandstra's peers acquitted him of the bogus charges after Defendants belatedly disclosed all the *Brady* material they withheld and his family paid lawyers to defend him.

11. Now, Mr. Zandstra has passed and his family seek redress for this extreme and immoral prosecution.

# JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. §1983 and 28 U.S.C. §§1331, 1343(a)(3), 1343(a)(4) and 1367(a).

2. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391(a) in that the Defendants are subject to personal jurisdiction within the Eastern District of Pennsylvania and the events that gave rise to this action occurred within the Eastern District of Pennsylvania.

3. Even more, the amount in controversy in this matter exceeds the statutory requirements.

# JURY DEMAND

4. Plaintiff demands a trial by jury on all issues and claims set forth in this Complaint, pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b).

# PARTIES

5. Plaintiff's decedent, David G. Zandstra, was a resident of the state of Georgia.

6. Plaintiff is a resident of the state of Georgia.

7. Defendant Andrew Martin is a resident of the Commonwealth of Pennsylvania and is being sued in his individual capacity. At the time of the incident at issue in this matter, he was a Corporal with the Pennsylvania State Police.

8. Defendant Eugene Tray is a resident of the Commonwealth of Pennsylvania and is being sued in his individual capacity. At the time of the incident at issue in this matter, he was a Trooper with the Pennsylvania State Police.

9. At all times relevant to this Complaint, defendants Martin and Tray acted in concert with other individuals, known and unknown, to deprive Mr. Zandstra of his constitutionally protected rights.

## FACTUAL BACKGROUND

10. On August 15, 1975, eight-year-old G.H. disappeared after leaving her home for summer bible school at a church in Delaware County, Pennsylvania.

11. The bible school consisted of two half-day sessions, with the first half taking place at Mr. Zandstra's church and the second half taking place at the church ministered by G.H.'s father, which was down the road in Delaware County from Mr. Zandstra's church.

12. According to interviews from the time of the incident, children would report to the first church at approximately 9:30 a.m. and were transported to the second church at 10:00 a.m.

13. G.H.'s father reported that he first became aware that G.H. was missing when the summer class arrived at 11:00 a.m. and G.H. was absent.

14. G.H.'s father reported that he immediately began searching along the road between the two churches for his daughter before contacting Plaintiff, Margaret Zandstra, who was at the Zandstra's church.

15. G.H.'s father reported that while he spoke with Mrs. Zandstra, Mr. Zandstra arrived.

16. On August 15, 1975 at 11:23 a.m., Mr. Zandstra contacted the Marple Township Police Department to report Harrington's disappearance.

17. On October 14, 1975, officials recovered the skeletal remains of what was later confirmed to be G.H.

18. An autopsy determined the cause of death to be cranial cerebral injuries, and the manner of death was determined to be homicide.

19. The autopsy concluded that G.H. suffered 2 or more blunt impacts to the skull causing a depressed skull fracture.

20. Officials also recovered a pair of blue canvas sneakers, blue denim shorts, a white and blue shirt, a pair of greens stockings, and white cotton underwear.

21. Numerous interviews were conducted at the time of the incident, none of which led to any arrests. As is the case with sensationalized cases, many of these reports proved to have no evidentiary value and were fueled by rumor and speculation given the nature of the crime.

22. Mr. Zandstra cooperated with investigators and provided a statement to them in October 1975.

23. Mr. Zandstra helped to search for G.H. and distributed fliers with her description, including her clothing, alongside other members of the community.

24. Mr. Zandstra also consented to a polygraph examination.

25. The case went cold from 1975 until 2021. Between 1975 and 2021, officials continued efforts to use DNA analysis to identify the perpetrator of this crime.

26. Defendants, in their affidavit of probable cause, documented that in 2021 they conducted an interview of Z.H., the sister of G.H., regarding G.H.'s death.

27. In the affidavit, the Defendants only note that "[Z.H.] related that Zandstra was the minister at the time, and his daughter was [G.H.]'s best friend."

28. Defendant Martin failed to mention that Z.H. <u>confessed to murdering G.H.</u>

29. Specifically, Trooper Martin received information on June 25, 2021 that Z.H. called the Pennsylvania State Police and reported that "the night her sister was abducted she was transported from her residence to Ridley Creek State Park by unknown males to where her sister was being kept."

30. Z.H. continued that "[t]wo to three males were standing with her sister, one of which was her father."

31. Z.H. continued that "[s]he witnessed her sister being sexually assaulted by all the men, including her father. When they finished, she was handed a rock and told to hit her sister with it. After striking her sister she was then returned home."

32. Z.H. also reported that she had also been sexually assaulted by the men in the past and described them as a "pedophilia club."

33. At the time of these interviews, Z.H.'s father was alive but in poor health and living in a rehab facility.

34. Defendant Martin documented this telephone call in a Homicide Investigation Action Report dated December 9, 2022.

35. Defendant Martin documented that on July 26, 2021, he spoke with Z.H. via telephone and Z.H. informed him that she was scheduled to visit her parents in August 2021.

36. Notably, Z.H. told Trooper Martin that she was interested in approaching her father with a recording device to discuss the murder of G.H.

37. Defendant Martin documented that he approached the First Assistant District Attorney for the Montgomery County District Attorney's Office for the submission of an Application for An Order Authorizing the Consensual Interception of Oral Communications in A Home.

38. This was in anticipation of their plan to have Z.H. approach her father concerning the murder of G.H.

39. Defendant Martin documented that the Orders were reviewed by the First Assistant District Attorney and it was arranged for the orders to be signed by a Montgomery County Court of Common Pleas Judge on August 6, 2021.

40. On August 6, 2021, defendant Martin documented that the Orders were reviewed and signed by the Montgomery County Court of Common Pleas Judge.

41. The Orders were submitted to the Court by the First Assistant District Attorney of Montgomery County and officially requested by defendant Martin, who prepared a memorandum in support of the application for the consensual wiretap intercept.

42. In the memorandum that was submitted to the Court in support of the application for the wiretap, defendant Martin described his basis for seeking the authorization:

   a. On June 25, 2021, Z.H. contacted Pennsylvania State Police Media Barracks and spoke with Trooper Zachary Dombroski about the homicide of her sister G.H.;

   b. Z.H. stated to Trooper Dombroski that the night her sister was abducted, she was transported by car to Ridley Creek State Park by two unknown males that walked her into the woods until they reached a location where they encountered her sister nude with two to three other unknown males. Their father was present.

   c. Z.H. stated to Trooper Dombroski that she witnessed G.H. being sexually assaulted by all the men, including her father. The men then told Z.H. to hit G.H. with a rock. Z.H. did so and G.H. fell to the ground, appearing to be deceased. Z.H. stated to Trooper Dombroski that she had also been sexually assaulted by the men and that

    it was some sort of secret pedophilia club. She was instructed not to speak to the police.

d. Z.H. told Trooper Dombroski that her father owned a green international pickup truck at the time of the incident. She also informed Trooper Dombroski of her family's current address and informed him that her father's health was poor.

e. On June 29, 2021, Trooper Caroline Rayeski conducted a formal interview with Z.H. where Z.H. was mirandized and confessed to killing G.H.

f. Z.H. provided the same information to Trooper Rayeski.

g. Z.H. also stated the size of the rock she used to hit G.H. and described the location where she struck her.

h. Z.H. also described clothing and reiterated that she has been sexually abused by her father prior to G.H.'s death.

i. On July 7, 2021, defendant Martin conducted an interview of Z.H. In that interview, Z.H. reiterated the same information and affirmed that (1) she was positive her father was one of the men at Ridley Creek Park when G.H. was killed because she recognized his voice.

j. Defendant Martin included the location of the non-consensual recording (an address in Montgomery County, Pennsylvania), a telephone number for any potential interceptions that occurred via telephone, and a date range (between August 9 and August 15, 2021).

k. Defendant Martin signed the application to the Court on August 9, 2021.

43. Defendant Martin documented that on August 10, 2021, he spoke with Z.H. and she related that she no longer wanted to perform an in-home consensual recording of her father because she was too afraid.

44. Despite all the above information and the submission for a non-consensual wire intercept application to a Montgomery County Court of Common Pleas judge, in his affidavit of probable cause supporting the arrest of Mr. Zandstra, defendants Martin and Tray summarize their August 2021 activity in this case as follows:

> On August 9, 2021, investigators conducted an interview of Zoey HARRINGTON (sister of Gretchen HARRINGTON) relative to this investigation. Zoey HARRINGTON related that ZANDSTRA was the minister at the time, and his daughter was Gretchen's best friend.

45. None of the information from paragraphs 28-44 of this Complaint was included in the affidavit of probable cause.

46. Defendants also included neutral, equivocal and non-probative evidence in a suggestive manner to falsely impress upon the magistrate that probable cause existed.

47. For example, Defendants suggested that a witness observed a girl similar in age to G.H. near a vehicle like Mr. Zandstra's on the morning of G.H.'s disappearance at the church location. It is undisputed that Mr. Zandstra had young daughters at the time so the ambiguous inclusion of this information was intentional deception on the part of the Defendants.

48. This, obviously, would mislead any neutral magistrate who is required to neutrally assess whether probable cause existed to arrest Mr. Zandstra.

49. Defendants intentionally omitted this information because they knew that they did not have probable cause to arrest Mr. Zandstra.

50. Defendants knew that by omitting this information, Mr. Zandstra would be prosecuted despite the absence of probable cause.

51. On June 14, 2023, Defendants submitted a substantially similar affidavit of probable cause in support of a search warrant for Mr. and Mrs. Zandstra's DNA.

52. On July 17, 2023, Defendants travelled to Cobb County, Georgia, where they obtained an interview room despite purporting to be present for the execution of search warrants for Mr. and Mrs. Zandstra's DNA.

53. On July 17, 2023, Defendants unconstitutionally coerced a false admission of guilt from Mr. Zandstra due to his advanced age and impaired neurological status.

54. Defendants included nothing about Mr. Zandstra's poor health or cognition in the affidavit of probable cause supporting Mr. Zandstra's arrest.

55. Defendants omitted the nature of the interrogation and failed to disclose significant errors and their own coercive and suggestive conduct in the affidavit of probable cause supporting Mr. Zandstra's arrest.

56. Defendants omitted the numerous inconsistencies with the uncontroverted evidence from the investigation into G.H.'s death.

57. Defendants Martin and Tray swore that the facts set forth in the affidavit were true and correct to the best of their knowledge, information and belief. This was a knowing and intentional false statement by both Defendants.

58. On July 17, 2023, Defendants arrested Mr. Zandstra and charged him with criminal homicide, murder of the first degree, murder of the second degree, murder of the third degree, possession of an instrument of crime, and kidnapping of a minor.

59. Mr. Zandstra was extradited to Pennsylvania to face trial and was denied bail.

60. Throughout the criminal proceedings, it became exceedingly obvious that Mr. Zandstra was innocent.

61. Defendants failed to provide Mr. Zandstra with evidence relating to Z.H.'s confession until the eve of trial.

62. Defendants failed to provide Mr. Zandstra with DNA evidence that excluded him as a contributor to the DNA that was discovered at the crime scene (some of which was identified as female DNA).

63. Defendants failed to provide the identity of a third suspect, R.B., whom Defendants investigated in 2017.

64. Defendants, as a part of their 2017 investigation, applied for a search warrant where they disclosed to the court that:

   a. R.B. had been convicted of numerous crimes against children in Delaware County;

   b. R.B. had been in the area of G.H.'s home;

   c. R.B. had previously lured a seven-year-old girl to his "fort in the woods," abducted her to a wooded area in Springfield Township, and then sexually assault her;

   d. R.B. lured a nine-year-old girl from her home in Springfield Township by offering her $50, then took her to his home in his vehicle and forced her to perform oral sex on him. R.B. then strangled the girl until she was unconscious and left her unconscious on a street in Philadelphia;

   e. R.B. abducted a fourteen-year-old girl in South Philadelphia by pushing her into his work van. He then sexually assaulted her and struck her with a stick on the head.

   f. At the time G.H was abducted and killed, R.B. was employed by an apartment building in Upper Darby, Pennsylvania, and on the date in question, he drove a blue pickup truck that he used to drop a piece of machinery off at Marple Tractor Company, which would have taken him to the victim's neighborhood;

    g.  A witness positively identified R.B. as the driver of a truck he observed stopping on the road near G.H.;

    h.  R.B. died incarcerated in a Pennsylvania State Correctional Institution.

    i.  Defendant Martin swore that "all the facts set forth in the foregoing affidavit are true and correct to the best of my knowledge, information, and belief" yet he failed to include them in the affidavit of probable cause he swore against Mr. Zandstra and he failed to cause this information to be provided to Mr. Zandstra until the eve of trial, in violation of *Brady*.

## DAMAGES

65. The unconstitutional misconduct of Defendants Martin and Tray caused Mr. Zandstra to be illegally arrested, maliciously prosecuted, and wrongfully incarcerated. The Defendant's unconstitutional misconduct caused Mr. Zandstra the terror of imprisonment, extreme mental, emotional and psychological stress, and the proliferation of his cancer.

66. Defendant's illegal arrest, malicious prosecution and incarceration of Mr. Zandstra caused him pain and suffering, mental anguish, emotional distress, countless indignities, permanent loss of human development, loss of freedom, involuntary servitude, loss of opportunity, loss of familial and intimate relations, post-traumatic stress disorder and the loss or curtailment of all of his constitutional rights, include his right to suffrage, freedom of speech, the right to peaceably assemble, freedom of religion and his bodily autonomy.

67. Prior to his passing, Mr. Zandstra was an 85-year-old shell of himself due to the stress and indignity of having been falsely accused.

68. Mr. Zandstra's legacy has been permanently impacted by these false accusations, as his status with the ministry he dedicated his life to has been impacted – at the time of his passing he remained suspended by his church denomination that he faithfully served for more than 40 years due to these false allegations.

69. As a direct result of Defendant's unconstitutional misconduct, Mr. Zandstra suffered economic damages, including but not limited to the payment of legal fees and the costs expended to battle advanced stage cancer, mental deterioration, and costs expended by his family to support him in a legal battle in a state far from home.

70. Due to Defendant's unconstitutional misconduct, Mr. Zandstra suffered the indignities of inadequate medical and dental care.

71. Due to Defendant's unconstitutional misconduct, Mr. Zandstra was forced to endure life as a prisoner accused of heinous crimes against a child, which led to the harm described above and beyond those suffered by typical prisoners.

### COUNT I: 42 U.S.C. §1983
### Malicious Prosecution in Violation of the Fourth Amendment

72. Defendants, acting individually and in concert with others known and unknown, with malice and knowing that probable cause did not exist to prosecute Mr. Zandstra for murder, kidnapping of a child and other related charges, through actions, testimony and deception, intentionally caused Mr. Zandstra to be arrested, charged and prosecuted for those crimes, thereby violating Mr. Zandstra's clearly established right, under the Fourth Amendment of the United States Constitution, to be free of arrest and prosecution absent probable cause.

73. Defendants fabricated evidence or presented evidence in an intentionally misleading way and intentionally withheld and misrepresented material relevant evidence, all of which resulted in the arrest and prosecution of Mr. Zandstra without probable cause.

74. Defendants performed the acts described in this Complaint under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Mr. Zandstra's clearly established constitutional rights. No reasonable person would have believed this conduct was lawful.

75. Defendants' falsehoods and omissions were used to obtain probable cause to arrest Mr. Zandstra.

76. The prosecution finally terminated in Mr. Zandstra's favor on January 17, 2025 when a jury acquitted him of all charges.

77. The acts and omissions by Defendants, as described in this Complaint, were the direct and proximate cause of Mr. Zandstra's illegal arrest, malicious prosecution, and wrongful incarceration and injuries because Defendants knew, or should have known, that their conduct would result in the wrongful arrest, prosecution, possible conviction, and incarceration of Mr. Zandstra.

**COUNT II: 42 U.S.C. § 1983**
**Deprivation of Liberty without Due Process of Law and**
**Denial of a Fair Trial Under the Fourteenth Amendment**

78. Defendants deprived Mr. Zandstra of his clearly established constitutional right to due process of law and to a fair trial by fabricating or tampering with evidence and deliberately using coercion, inducement, perjury, perjury by omission and suggestion to deprive Mr. Zandstra of a fair trial.

79. Defendants deprived Mr. Zandstra of his right to a fair trial by concealing, suppressing and withholding relevant and material evidence as described in this Complaint and perjuring themselves by omission, all of which prevented Mr. Zandstra from mounting a viable defense.

80. Defendants' fabrications, tampering, concealment, suppression and withholding were performed under color of state law, intentionally and with reckless disregard for the truth, and with deliberate indifference to Mr. Zandstra's constitutional rights. No reasonable person would have believed this conduct was lawful.

81. Defendants deprived Mr. Zandstra of his right to a fair trial by deliberately failing to conduct a constitutionally adequate investigation, including, without limitation, by failing to pursue or document information from various witnesses and forensic evidence to deceive by omission, perjury through omission and deliberately deceiving the Court, all of which would have led to the prompt dismissal of charges against Mr. Zandstra had the misconduct not occurred.

82. Defendants acts and omissions, as described in this Complaint, were the direct and proximate cause of Mr. Zandstra's injuries. Defendants knew, or should have known, that their conduct would result in Mr. Zandstra's wrongful arrest, prosecution and incarceration.

## COUNT III
### Civil Rights Conspiracy

83. Defendants acting under the color of state law, agreed among themselves and with other unknown individuals, to act in concert to deprive Mr. Zandstra of his clearly established Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures, false arrest, false imprisonment, malicious prosecution, deprivation of liberty without due process of law, to be informed of the nature and cause of accusations, to have compulsory process for obtaining witnesses in his favor, and to a fair trial.

84. In furtherance of the conspiracy, the Defendants engaged in and facilitated numerous overt acts, including but not limited to, the following:

   a. the application of an unsound definition of probable cause in criminal investigations and submissions to judicial officers;

b. suggesting, coercing, inducing and fabricating inculpatory evidence in the form of witness statements and purported admissions of guilt or confessions;
c. coercing, inducing and fabricating witness statements and false identifications;
d. intentionally or with deliberate indifference failing to comply with their duty to disclose material and relevant evidence during the pendency of the case;
e. wrongfully arresting and prosecuting Mr. Zandstra while knowing they lacked probable cause;
f. coercing and inducing false identifications;
g. fabricating evidence and deliberating deceiving judicial officers.

85. These acts and omissions, as described in the preceding paragraphs, were the direct and proximate cause of Mr. Zandstra's injuries. Defendants knew, or should have known, that their conduct would result in Mr. Zandstra's wrongful arrest, prosecution, and incarceration.

**WHEREFORE**, Plaintiff, Margaret Zandstra, as Administrator of the Estate of David Zandstra, seeks damages against Defendants, jointly and severally, in an amount greater than the statutory requirements, including costs of suit, interest, attorney's fees, punitive/exemplary damages and such other relief as this Honorable Court deems appropriate.

**ROSS FELLER CASEY, LLP**

By: /s/ Kevin Harden, Jr.
Matthew A. Casey, Esquire (ID #84443)
Kevin Harden, Jr., Esquire (ID #310164)
One Liberty Place - Suite 3450
1650 Market Street
Philadelphia, PA 19103
Tel: 215-574-2000

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: _Delaware County, Pennsylvania_____

---

**RELATED CASE IF ANY:** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?    Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?    Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?    Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?    Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?    Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A. Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Wage and Hour Class Action/Collective Action
6. ☐ Patent
7. ☐ Copyright/Trademark
8. ☐ Employment
9. ☐ Labor-Management Relations
10. ☐ Civil Rights
11. ☐ Habeas Corpus
12. ☐ Securities Cases
13. ☐ Social Security Review Cases
14. ☐ Qui Tam Cases
15. ☐ Cases Seeking Systemic Relief  ***see certification below***
16. ☐ All Other Federal Question Cases. *(Please specify)*:_____

*B. Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (*Please specify*):_____
7. ☐ Products Liability
8. ☐ All Other Diversity Cases: *(Please specify)*_____
   _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☐ **does not** have implications beyond the parties before the court and ☐ **does** / ☐ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☐ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Margaret Zandstra as Admin. of the Estate of David Zandstra, Deceased

## DEFENDANTS
Andrew Martin, and Eugene Tray, Individually

**(b)** County of Residence of First Listed Plaintiff: **Cobb County, Georgia**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: **Philadelphia**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Matthew A. Casey & Kevin Harden, Jr., 1650 Market Street, 34th Fl, Phila, PA 19103, 215-574-2000

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [x] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [x] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- 110 Insurance
- 120 Marine
- 130 Miller Act
- 140 Negotiable Instrument
- 150 Recovery of Overpayment & Enforcement of Judgment
- 151 Medicare Act
- 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- 153 Recovery of Overpayment of Veteran's Benefits
- 160 Stockholders' Suits
- 190 Other Contract
- 195 Contract Product Liability
- 196 Franchise

**TORTS — PERSONAL INJURY**
- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault, Libel & Slander
- 330 Federal Employers' Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury
- 362 Personal Injury - Medical Malpractice

**TORTS — PERSONAL INJURY**
- 365 Personal Injury - Product Liability
- 367 Health Care/Pharmaceutical Personal Injury Product Liability
- 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

**REAL PROPERTY**
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

**CIVIL RIGHTS**
- [x] 440 Other Civil Rights
- 441 Voting
- 442 Employment
- 443 Housing/Accommodations
- 445 Amer. w/Disabilities - Employment
- 446 Amer. w/Disabilities - Other
- 448 Education

**PRISONER PETITIONS — Habeas Corpus:**
- 463 Alien Detainee
- 510 Motions to Vacate Sentence
- 530 General
- 535 Death Penalty

**Other:**
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition
- 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- 625 Drug Related Seizure of Property 21 USC 881
- 690 Other

**LABOR**
- 710 Fair Labor Standards Act
- 720 Labor/Management Relations
- 740 Railway Labor Act
- 751 Family and Medical Leave Act
- 790 Other Labor Litigation
- 791 Employee Retirement Income Security Act

**IMMIGRATION**
- 462 Naturalization Application
- 465 Other Immigration Actions

**BANKRUPTCY**
- 422 Appeal 28 USC 158
- 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- 820 Copyrights
- 830 Patent
- 835 Patent - Abbreviated New Drug Application
- 840 Trademark
- 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- 861 HIA (1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g))
- 864 SSID Title XVI
- 865 RSI (405(g))

**FEDERAL TAX SUITS**
- 870 Taxes (U.S. Plaintiff or Defendant)
- 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- 375 False Claims Act
- 376 Qui Tam (31 USC 3729(a))
- 400 State Reapportionment
- 410 Antitrust
- 430 Banks and Banking
- 450 Commerce
- 460 Deportation
- 470 Racketeer Influenced and Corrupt Organizations
- 480 Consumer Credit (15 USC 1681 or 1692)
- 485 Telephone Consumer Protection Act
- 490 Cable/Sat TV
- 850 Securities/Commodities/Exchange
- 890 Other Statutory Actions
- 891 Agricultural Acts
- 893 Environmental Matters
- 895 Freedom of Information Act
- 896 Arbitration
- 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Sec. 1983

Brief description of cause:
Defendants maliciously prosecuted Plaintiff's Decedent in violation of the Fourth Amendment

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):* JUDGE _____ DOCKET NUMBER _____

DATE: 1/9/2026

SIGNATURE OF ATTORNEY OF RECORD: /s/ Matthew A. Casey

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____